IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEVEN K. SHAW                                                                PLAINTIFF

v.                                    Civil No. 07-5022

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Steven Shaw, having exhausted available administrative remedies, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision issued by the Commissioner of the Social Security Administration.  The Commissioner denied Plaintiff's application for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") based on findings that Plaintiff is not disabled within the meanings of §§ 216(I), 223(d) and § 1614(a)(3)(A) of the Social Security Act (the "Act"), as amended and codified at 42 U.S.C. §§ 416(I), 423(d) and 1382c(a)(3)(A).  On review, in accordance with 42 U.S.C. § 405(g), this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  As reflected below, the Court finds such evidence to be lacking.  Accordingly, the Commissioner's decision is reversed and the case is remanded for further proceedings.

**Procedural Background**

On September 14, 2004, Plaintiff protectively filed a Title II application for a period of disability and DIB and a Title XVI application for SSI, alleging disability beginning August 8, 2004. (Tr. 77-79)  The applications were denied on December 27, 2004 (Tr. 25-26, 41), and the denial was affirmed upon reconsideration. (Tr. 47-49)  On May 20, 2005, Plaintiff timely filed

a written request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 50) On June 5, 2006, a hearing was conducted in Fayetteville, Arkansas. (Tr. 378) Testimony was received from Tanya Owens, an impartial vocational expert, Joyce Ralston, a friend of the Plaintiff's, and the Plaintiff. (Tr. 378-427) On September 15, 2006, the ALJ issued a determination that, between the alleged onset date of August 8, 2004 and the time of the ALJ's decision, Plaintiff was not disabled within the meaning of the Act. (Tr. 19) While the ALJ found Plaintiff to suffer from certain severe impairments that prevented him from performing past work (Tr. 17), the ALJ concluded that Plaintiff retained a residual functional capacity ("RFC") sufficient to perform certain light unskilled jobs such as information clerk, sales counter clerk and call out operator. (Tr. 18)

On October 13, 2006, Plaintiff timely filed a request for review of the ALJ's decision. (Tr. 6) The Appeals Council denied Plaintiff's request for review. (Tr. 3) As a result of the denial of Plaintiff's request for review by the Appeals Council, the ALJ's decision became the final decision of the Commissioner.

On February 6, 2007, Plaintiff filed a Petition (Doc. 1) in this Court, seeking judicial review of the Commissioner's decision. This case is before the Court by consent of the parties. Both parties have filed appeal briefs (Docs. 10, 12), and the case is ripe for decision.

**Standard of Review**

In reviewing the Commissioner's decision, the Court must determine if the findings of the Commissioner are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). "'Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a

conclusion.'" *Id*. (quoting *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002)). Examining both supportive and detractive evidence, the Court must affirm a decision if one of two "feasible inconsistent" conclusions, based on that evidence, supports the decision. *Id.* (citing *Ostronski v. Chater,* 94 F.3d 413, 416 (8th Cir.1996)); *see Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). If such a conclusion is supported by substantial evidence, the fact that a contrary conclusion is also supported by substantial evidence in the record does not permit reversal. *Haley v. MaActnari*, 258 F.3d 742, 747 (8th Cir. 2001).

**Applicable Law**

A claimant for benefits under the Act bears the burden of proving he suffers from a disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. MaActnari*, 274 F.3d 1211, 1217 (8th Cir.2001); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "disability" generally as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).

Regulations of the Social Security Administration require the Commissioner to apply a five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Each step of the process requires the Commissioner to consider

a factor that may be dispositive, as a disability determination on any element allows the Commissioner to decline to reach the remaining elements. *See* 20 C.F.R. § 404.1520(a)(4). Pursuant to 20 C.F.R. §§ 404.1520, 416.920, the Commissioner must determine: (1) whether the claimant has engaged in substantial gainful activity since filing his claim and is thus not disabled; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments that meets the duration requirement; (3) whether such impairments meet or equal an impairment in the listings in Appendix 1 to Subpart 404.1520; (4) whether the impairments prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, experience and residual functional capacity.

**Discussion**

With respect to the five-step process described above, the ALJ in the case at bar determined: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 8, 2004 (Tr. 14), which predates the filing of Plaintiff's applications for period of disability, DIB and SSI; (2) Plaintiff has severe impairments, including coronary artery disease, degenerative joint disease, a history of shoulder dislocation and degenerative disc disease of the cervical spine; however, other impairments claimed by Plaintiff are non-severe (Tr. 14-15); (3) Plaintiff does not suffer from an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 (Tr. 15); (4) Plaintiff is prevented by his impairments from performing past relevant work (Tr. 17); and, (5) Plaintiff is able to perform work available in the national economy given his age, education and experience. (Tr. 18)

Of particular concern to the undersigned is the ALJ's finding as to the credibility of Plaintiff's subjective complaints of pain. Plaintiff testified to having pain resulting from several sources, including ongoing pain resulting from joint rotator cuff damage in his right shoulder, pain in the left shoulder to the elbow resulting from nerve problems, angina pain resulting from coronary disease, carpel tunnel syndrome in his wrists and chronic back pain. (Tr. 400-409) In assessing Plaintiff's RFC, the ALJ determined "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 16) Thus, to some extent, Plaintiff's alleged pain was not taken into consideration by the ALJ in determining Plaintiff's RFC and the severity of Plaintiff's impairments.

"[P]ain can cause disability within the meaning of the Social Security Act." *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir. 1978); *see also Ghant v. Bowen*, 930 F.2d 633, 637 (8th Cir. 1991). Subjective complaints of pain may be discredited only if "they are inconsistent with the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The Court does not find substantial evidence in the record to support the conclusion that Plaintiff's complaints of pain are not credible and not properly contemplated in determining whether Plaintiff is disabled under the Act.

On November 14, 1995, Dr. M.A. Claassen diagnosed Plaintiff with chronic low back pain with symptoms of coccydynia following a work injury and subsequent car accident. (Tr. 303-04) Between November 14, 1995 and January 9, 2003, Plaintiff visited Dr. Timothy B. Wiens at the Wichita Clinic on numerous occasions. (Tr. 213-229, 302-369) Dr. Wiens

diagnosed Plaintiff with chronic low back pain, a renal contusion and hematuria on August 26, 1996 (Tr. 313); lumbosacral strain, thoracic back pain and hematuria on October 14, 1996 (Tr. 320); low back pain with radiculopathy into the right leg and bilateral sacroiliac joint pain on June 12, 1998 (Tr. 321); bilateral carpal tunnel syndrome and chronic low back pain on August 6, 1999 (Tr. 333); atypical chest pain with a strong family history of coronary artery disease on October 27, 1999 (Tr. 336); left shoulder pain due to rotator cuff tendonitis on December 21, 1999 (Tr. 339); left lateral epicondylitis of the elbow on January 1, 2000 (Tr. 340); right sacroiliac joint pain on (Tr. 352); and, low back pain, temporomandibular joint pain, right shoulder pain, chest pain, hypertension and anemia on August 5, 2002. (Tr. 220) Dr. Wiens prescribed numerous medications to Plaintiff, including Lortab and Ultram (Tr. 314), Kenalog and Marcine injections (which ultimately resulted in "no significant relief" (Tr. 323)), Vioxx (Tr. 333), Nitroglycerin and Zyban. (Tr. 336)

Plaintiff visited Dr. Lee Dorey on many occasions from March 21, 2000, to June 24, 2002. (Tr. 135-193, 199-203) Dr. Dorey diagnosed Plaintiff with left elbow lateral epicondylitis on March 21, 2000 (Tr. 193-94), left wrist carpal tunnel syndrome and left elbow supinator syndrome on March 20, 2001 (Tr. 138), bicipital tendonitis and cervical disc derangement on October 1, 2001 (Tr. 161), impingement syndrome in the right shoulder on May 23, 2002. (Tr. 200) Dr. Dorey admitted Plaintiff to the hospital for a left elbow surgical release of the lateral epicondylitis on September 5, 2000. (Tr. 146, 190) Following that surgery, post-operative infection required Dr. Dorey to perform a drainage procedure to remove fluid from Plaintiffs's elbow. (Tr. 141) Dr. Dorey admitted Plaintiff again on March 20, 2001, for a surgical release of his left carpal tunnel syndrome and left elbow release of the supinator muscle. (Tr. 135-37)

6

An MRI was performed on Plaintiff's cervical spine on March 2, 2001. (Tr. 171) The radiologist found narrowing of the right third and fourth foramina presumably by spurs. (Tr. 171) A November 7, 2001, x-ray revealed anterior dislocation of the right shoulder. (Tr. 151) Plaintiff underwent an examinations and x-rays of his right shoulder on January 31, 2002, and February 26, 2002, based on complaints of pain and tenderness that resulted in diagnoses of rotator cuff damage. (Tr. 154, 156) An MRI was performed on Plaintiff's right shoulder on April 10, 2002, revealing a thinned rotator cuff, increased signal in the cuff suggesting a small partial tear and a potential ganglion cyst represented by fluid interposed between the acromial clavicular joint and the supraspinatus muscle. (Tr. 197)

Plaintiff underwent a Physical Residual Functional Capacity Assessment on August 22, 2002, for the Social Security Administration. (Tr. 204-12) The examining physician determined Plaintiff could lift 20 pounds occasionally, lift 10 pounds frequently, stand or walk for about six hours and push or pull unlimitedly. (Tr. 205) Plaintiff underwent a Physical Residual Functional Capacity Assessment on December 21, 2004, for the Social Security Administration (Tr. 271-79), resulting in a similar determination, except that pushing and pulling was limited in the upper extremities. The examining physician found Plaintiff's allegations as to the severity of his symptoms to be credible and consistent with the medical and non-medical evidence. (Tr. 276)

On December 14, 2004, Dr. Steven Van Ore performed a general physical examination on Plaintiff for the Social Security Administration (Tr. 263-69), revealing decreased forward elevation in the shoulders, possible addiction to Morphine Sulfate Immediate Release ("MSIR") and dislocation of the right shoulder with a severe scar.

An August 17, 2002, heart catheterization revealed a mid long 60-70% stenosis of the left anterior descending artery and approximately 50% stenosis in the right coronary artery. (Tr. 294) The Galichia clinic issued a letter on September 15, 2005, describing Plaintiff's heart condition, which the clinic treated on September 5, 2002, following the heart catheterization. (Tr. 294) The letter states that at the time of Plaintiff's examination Plaintiff had periodic chest pain and there was a danger of unstable angina, that Plaintiff's condition has progressed, that further cardiac evaluation is needed including another heart catheterization, that Plaintiff is significantly physically limited by his condition, that Plaintiff is without insurance and finds it cost prohibitive to receive the further recommended treatment and that coronary artery bypass grafting will be necessary if the condition progresses further. (Tr. 294)

In analyzing Plaintiff's subjective complaints of pain in light of the evidence described above, the ALJ properly employed the framework required by 20 C.F.R. §§ 404.1529, 416.929 and *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984), taking into consideration the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. As to duration and intensity of pain, the ALJ noted that Plaintiff "reported daily pain in his arms, neck and back" and "chest pain once a week." (Tr. 16) As to precipitating and aggravating factors of Plaintiff's pain, the ALJ noted Plaintiff "cannot move his arms overhead," "has pain if he stands for too long" and "has trouble sleeping unless he is in a recliner." (Tr. 17) As to Plaintiff's medication, dosage, effectiveness and side effects, the ALJ noted Plaintiff "takes a significant amount of pain medication and one physician suggested he might be addicted to pain medications. His medications make him sleepy, drowsy, and unsteady on his feet." (Tr. 17) As to functional restrictions, the ALJ noted

8

that Plaintiff is "unable to drive because of his medications," "cannot perform overhead reach activities," "needs to sit down often" and that Plaintiff "gets help with dressing and bathing," "cannot finish mowing the lawn" and his "friend helps with shopping." (Tr. 17) After consideration of that evidence, Plaintiff's "appearance and demeanor" and the "entire record" (Tr. 17.), the ALJ made its credibility determination and concluded that Plaintiff could perform light unskilled work despite his complaints of pain and other ailments. (Tr. 17)

Plaintiff contends the ALJ erred in finding Plaintiff's complaints of pain were not credible. (Doc. 10 pp. 2, 16) Viewing the record in this case, the Court is unable to find substantial evidence supporting the conclusion that Plaintiff's complaints of pain are not credible. The examining physician that performed Plaintiff's December 21, 2004, Physical Residual Functional Capacity Assessment for the Social Security Administration determined that Plaintiff's allegations as to the severity of his symptoms were credible and consistent with the medical and non-medical evidence. (Tr. 276) The ALJ makes no mention of that determination and fails to explain how the physician's finding is contradicted by the evidence as a whole. As described above, physicians treated Plaintiff extensively over a period of years, diagnosing Plaintiff's pain and prescribing numerous prescriptions, injections and surgeries to treat pain.

The ALJ failed to identify which of Plaintiff's statements she considered to be not credible, concluding only that Plaintiff is "credible only to the extent that his allegations are supported by the medical record." (Tr. 17) Plaintiff's complaints include that he experiences shoulder pain "a good eighty percent of the time" (Tr. 402), that his left elbow hurts "most of the time" (Tr. 401), that his pain extends to his neck (Tr. 402), that he has pain in both hands (Tr.

403), that he has chronic back pain (Tr. 403), and that he experiences "sharp pain" if he sits too long. (Tr. 412) The record does not contain substantial evidence contradicting such complaints.

The Court is able to find few statements in the ALJ's decision that may be construed to identify evidence contradicting Plaintiff's complaints. The ALJ noted that Plaintiff "is still able to do things like shopping and mowing the lawn." (Tr. 16) The Court finds that evidence does not substantially contradict Plaintiff's complaints of pain, which may permit brief activities but prevent the prolonged activity of a work day. The ALJ noted that Plaintiff "does take a lot of medication for pain, but that his underlying conditions of rotator cuff injury and carpel tunnel syndrome have been treated." (Tr. 16) However, evidence of the extensive and ongoing treatment Plaintiff receives for pain does not substantially contradict Plaintiff's testimony concerning the nature of his pain. While Plaintiff testified that his medications "take [his] pain down quite a bit" (Tr. 407), nothing in the record suggests that his treatments have successfully eliminated Plaintiff's pain such that it should not be considered in assessing his capabilities. The ALJ noted that Plaintiff's "heart condition has not been significantly addressed during the period of alleged disability." (Tr. 16) However, Plaintiff's complaints of chest pain are not necessarily undermined by lack of treatment. The Galichia Clinic letter states that Plaintiff has periodic chest pain but that Plaintiff is without insurance and finds it cost prohibitive to receive the recommended treatment for his condition. (Tr. 294) To the extent that economic limitations prevent Plaintiff from seeking treatment, the lack of treatment is not evidence of the alleviation of Plaintiff's symptoms.

Whereas there is not substantial evidence in the record to support the ALJ's finding that Plaintiff's subjective complaints of pain are not credible, the Court concludes that the ALJ erred

in determining Plaintiff's subjective complaints of pain are not credible. While accepting Plaintiff's complaints of pain may not result in a determination of disability, the Court finds error in making such determination without consideration of subjective complaints of pain that are supported by an extensive record containing diagnoses of pain by several treating physicians over the course of several years.

**Conclusion**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 6th day of March 2008.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)